ELECTRONICALLY
FILED
Apr 22 2026
U.S. DISTRICT COURT
Northern District of WV

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINI
WHEELING DIVISION

DIANA MEY,

      Plaintiff,

v.

      Civil Action No. **5:26-CV-87 (Bailey)** _____

ALLSTATE INSURANCE COMPANY and
CENTERFIELD MEDIA HOLDING COMPANY

      Defendants.

## COMPLAINT

      Plaintiff Diana Mey states as follows for her Complaint against Defendants Allstate Insurance Company and Centerfield Media Holding Company:

### PRELIMINARY STATEMENT

      1.    Mey brings this lawsuit under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. Mey also brings this lawsuit under the West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-6F-101 et seq., a state statute prohibiting abusive, unfair, and deceptive telemarketing practices.

### PARTIES AND JURISDICTION

      2.    Plaintiff Diana Mey is an individual residing in Wheeling, West Virginia.

3.      Defendant Allstate Insurance Company is an Illinois insurance company with a principal place of business in Northbrook, Illinois. It is registered with the West Virginia Secretary of State to do business in West Virginia.

4.      Defendant Centerfield Media Holding Company, d/b/a Centerfield Insurance Services (formerly Datalot), is a Delaware corporation with a principal place of business in California. It is registered with the West Virginia Secretary of State to do business in West Virginia.

5.      Defendants conduct business throughout this district and the United States. At all relevant times, Defendants conducted business in West Virginia, solicited business in West Virginia from West Virgina consumers, and/or derived substantial revenue from products and services sold in West Virginia.

6.      Because several of Mey's claims arise under federal law, this Court has subject-matter jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 as to the remaining state law claims.

7.      Because a substantial part of the events or omissions giving rise to Mey's claims occurred in this district, venue is proper under 28 U.S.C. § 1391(b)(2). In particular, the telemarketing calls to Mey were received in this district.

## OPERATIVE FACTS

8.      Allstate and its agents engage in widespread unsolicited telemarketing to promote the sale of Allstate insurance products to consumers throughout the United States, including in West Virginia.

2

9.     Centerfield is a digital marketing and sales company that generates customer leads for major brands, including Allstate. Centerfield owns and manages various online properties, including Autoinsurance.com, Centerfield.com, and Datalot.com. Datalot.com represents that "We acquire new customers for leading auto, home, life, health, Medicare, and commercial insurance companies at scale." Centerfield.com similarly represents that it provides "in-market qualified consumers to leading auto, home, life, health, Medicare, and commercial insurance companies and agents at scale."

10.     Upon information and belief, Centerfield is an Allstate-approved lead generator vendor used by Allstate agents to procure customer leads.

11.     Mey's wireless residential telephone number, 304-381-XXXX, has been listed on the National Do Not Call Registry continuously for at least the 30 days prior to the date of each of the unsolicited calls at issue in this matter. Mey uses this telephone line for purely residential purposes.

12.      Mey's number is assigned to a Voice over Internet Protocol (VoIP) telephone service which allows for voice calls to be placed over a broadband Internet connection.

13.     Mey is charged by the VoIP telephone service provider VOIP.MS for each call or text received. VOIP.MS also charges Mey a per-minute charge of $0.009 per minute for each minute of talk time, including voicemail time, for each call placed to her number.

14.     Mey has never provided Allstate, Centerfield, or its agents prior express written consent to call her number, nor does she have an established business relationship with them.

15.     While Mey has received well in excess of 120 unsolicited telemarketing calls from or on behalf of Allstate to her number since November 2025, the following calls evidence Allstate's unlawful conduct:

   a.   On November 24, 2025 at 11:30 a.m., Mey received a telemarketing call from spoofed number 223-241-0626. A prerecorded message played from "Heather," noting a 35% reduction in auto insurance rates and offering to provide auto insurance quotes. That message, sent to Mey's voicemail, was delivered in a robotic or automated voice.

   b.   On November 25, 2025 at 11:02 a.m., Mey received a telemarketing call from spoofed number 304-965-6147. A prerecorded message played from "Elsa," noting a 35% reduction in auto insurance rates and offering to provide auto insurance quotes. The message, sent to Mey's voicemail, was delivered in a robotic or automated voice and was nearly identical to the message that played during the prior day's call.

   c.   On November 25, 2025 at 5:50 p.m., Mey received a telemarketing call from spoofed number 304-965-6147. A prerecorded message played from "Emily," noting a 35% reduction in auto insurance rates and offering to provide auto insurance quotes. The message, sent to Mey's voicemail,

was delivered in a robotic or automated voice and was nearly identical to the message that played during the prior calls.

d. On November 26, 2025 at 1:30 p.m., Mey received a call from spoofed number 304-765-5510. A prerecorded message played from "Emily," noting a 35% reduction in auto insurance rates and offering to provide auto insurance quotes. The message was delivered in a robotic or automated voice and was nearly identical to the message that played during the prior calls. After the prerecorded message played, Mey was transferred to a live foreign-accented male "Mark from US Auto Care" who noted a 35% reduction in auto insurance rates.

e. On December 4, 2025 at 11:44 a.m., Mey received a call from spoofed number 304-873-1055. Upon answering, a message identical to the prerecorded message on the previous call from "Emily" played. At the conclusion of the prerecorded message, the call was transferred to a live male agent, "Mark Cohen with US Auto Insurance." Prior to transferring the call, Cohen coached Mey on what she should say when he transferred the call to "my licensed agent." The call was then transferred to "Raven" with "AutoInsurance.com," a website which is owned and operated by Centerfield. Raven proceeded to ask a series of prequalification questions. Following that, Raven transferred Mey to "Garrett with Allstate," who again asked Mey a series of auto-insurance-related questions. Before concluding the call, the agent confirmed his

name: Garrett Blair, who is a licensed agent appointed to sell Allstate insurance products.

16.   From December 5, 2025 through March 2026, Mey received numerous additional calls from numbers with similarly-spoofed West Virginia (304) area codes. Many of these calls delivered prerecorded messages that were substantially similar to those previously received. Many were directed to Mey's voicemail inbox, while some she answered.

17.   Prior to receiving these telephone calls from or on behalf of Allstate, Mey never provided prior express written consent to be called by or on behalf of Allstate, Centerfield, or their respective agents.

18.   In many instances, Allstate, acting directly or through one or more intermediaries such as Centerfield, "spoofed" their calls by transmitting phony caller identification information so that call recipients do not know the true source of the calls.

19.   In many instances, Allstate, acting directly or through one or more intermediaries such as Centerfield, failed to disclose truthfully, promptly and in a clear and conspicuous manner to the person receiving the call (a) the identity of the seller, (b) that the purpose of the call was to sell goods or services, or (c) the nature of the goods or services.

20.   Mey was harmed by the calls as she was temporarily deprived of the legitimate use of her telephone, her privacy was improperly invaded, and they were

frustrating, annoying, and disturbing. Mey was billed for these calls by her service provider, VOIP.MS.

21.     Upon information and belief, the acts complained of herein were either the direct acts of Defendants or the acts of agents and/or subagents authorized to act on Defendants' behalf.

## COUNT I
## Violations of the TCPA, 47 U.S.C. § 227(b)

22.     Mey incorporates the allegations from all previous paragraphs as if fully set forth herein.

23.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call."  *See* 47 U.S.C. § 227(b)(1)(A)(iii) and (b)(1)(B).

24.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

25.     Under the TCPA, a person or entity can be liable for calls made on its behalf, even if the person or entity does not directly place the calls. 47 U.S.C. § 227(c)(5).

26.     As explained by the FCC, the agency charged with interpreting and enforcing the TCPA, the applicable rules "generally establish that the party on whose

7

behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Red. 12391, 12397 ¶ 13 (1995).

27.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to Mey's telephone number using prerecorded messages.

28.    Defendants' actions, or those of agents operating on their behalf, were done willfully or knowingly.

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227(c)

29.    Mey incorporates the allegations from all previous paragraphs as if fully set forth herein.

30.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls to Mey's residential telephone, which was listed on do-not-call registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

31.    Mey received more than one telephone call within a 12-month period by or on behalf of Allstate in violation of the TCPA.

32.    Defendants' actions, or those of agents operating on their behalf, were done willfully or knowingly.

## COUNT III

## Violations of the WVCCPA, W. Va. Code §§ 46A-6F-101 et seq.

33.    Mey incorporates the allegations from all previous paragraphs as if fully set forth herein.

34.    Defendants and/or their agents committed abusive acts or practices as defined by W. Va. Code § 46A-6F-601(a)(2) because they engaged Mey repeatedly or continuously with behavior a reasonable person would deem to be annoying, abusive, or harassing.

35.    Defendants and/or their agents committed abusive acts or practices as defined by W. Va. Code § 46A-6F-601(a)(3) because they initiated outbound calls to Mey after she had indicated that she did not want to receive such calls.

36.    Defendants and/or their agents knowingly engaged in the transmission of misleading or inaccurate caller identification information, including, but not limited to, circumventing caller identification technology that allows consumers to identify from what phone number or organization the call has originated from, or to otherwise misrepresent the origin and nature of the solicitation. *See* W. Va. Code § 46A-6F-501(9).

37.    Defendants' actions, or those of agents operating on their behalf, were done willfully or knowingly.

38.    Accordingly, Mey is entitled to relief from Defendants as prescribed under W. Va. Code §§ 46A-6F-502 and 701, including actual damages and statutory

penalties. Mey is likewise entitled to reasonable attorney's fees under W. Va. Code § 46A-5-104.

WHEREFORE, Plaintiff demands from Defendants statutory penalties and damages as provided by law, pre- and post-judgment interest, costs, attorney's fees, and whatever further relief the Court deems appropriate.

JURY TRIAL DEMANDED

**DIANA MEY**

By Counsel:

/s/ Andrew C. Robey
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com